UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| LOUIS PETRONE, | Case No. 1:11-cv-00484-CL |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner Social Security Administration, | |
| Defendant. | |

CLARKE, Magistrate Judge:

Plaintiff Louis Petrone (Petrone) seeks review of the Social Security Commissioner's partially favorable decision, which denied his application for Disability Insurance Benefits under Title II of the Social Security Act prior to July 1, 2008. For the following reasons, I recommend that this Court reverse the Commissioner's decision and remand for further proceedings.

## Background

Petrone was born in 1953 and is a high school graduate with some college education. (Tr. 311-312). He has past relevant work experience as a journeyman electrician. *Id.* Petrone has been

Page 1 - FINDINGS AND RECOMMENDATION

an electrician since participating in an apprenticeship program in 1975. (Tr. 104). Petrone applied for disability insurance benefits because of neurologic complications from two 1998 surgeries for an acoustic neuroma. (Tr. 287). The complications following the surgeries caused Petrone's physical condition to worsen over time. *Id.* In late 2006, Petrone's hours of work began to decrease and his job responsibilities were lightened. (Tr. 84). Petrone alleges a disability onset date of May 5, 2005. (Tr. 19). At the time of the alleged onset date, Petrone was 52 years old, falling within the "person closely approaching advanced age" category. 20 C.F.R. § 404.1563(d). Petrone subsequently moved into the next age category, "persons of advanced age," when he turned 55 years old on March 21, 2008. *Id.* at § 404.1563(e).

Petrone filed for disability insurance benefits on May 22, 2006. (Tr. 19). The claim was denied initially and upon reconsideration. *Id.* On September 10, 2008, a hearing was held before Administrative Law Judge (ALJ) John J. Madden, at which Petrone was present, represented by counsel and testified. (Tr. 307-336). On February 12, 2009, the ALJ issued a partially favorable decision finding Petrone was disabled as of July 1, 2008. (Tr. 19-24). On February 25, 2011 the Appeals Council declined review, making the ALJ's decision the final decision of the Commission. (Tr. 5). Subsequently, Petrone filed a complaint in this Court.

### Disability Analysis

The Commissioner engages in a sequential process ranging between one and five steps in determining whether an individual is disabled under the Act. *Bowen v. Yukert*, 482 U.S. 137, 140 (1987).

Step one requires the ALJ to determine if the claimant is performing substantial gainful activity (SGA). 20 C.F.R. § 404.1520(a)(4)(I). To constitute SGA, the work must be both

substantial, which involves significant physical or mental activities, and gainful, which is work done for pay or for profit. 20 C.F.R. § 404.1572. If the claimant is or has been engaged in SGA, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the ALJ must determine if the claimant has a "severe medically determinable physical and mental impairment" that meets the twelve month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have such an impairment, he is not disabled. At step three, the ALJ must determine whether the severe impairment (or a combination of impairments) meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ determines the impairment (or combination of impairments) equals a listed impairment, then the claimant is disabled.

If the adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular basis, despite the limitations imposed by his impairments. 20 C.F.R. § 404.1520(a)(4)(e). The ALJ uses this information to determine if the claimant can perform past relevant work at step four. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ must determine if the claimant can perform other work in the national economy at step five. 20 C.F.R. § 404.1520(a)(4)(v); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

The claimant bears the initial burden of establishing disability. *Tackett*, 180 F.3d at 1098. If the analysis reaches the fifth step, the burden shifts to the Commissioner to show that jobs within the claimant's RFC exist in the national economy. *Id.* If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g).

Page 3 - FINDINGS AND RECOMMENDATION

**The ALJ's Findings**

At the first step of the five step sequential evaluation process outlined above, the ALJ found that Petrone was engaged in SGA prior to July 1, 2008 because his earnings were higher than the threshold amount in 20 C.F.R § 404.1574(b)(2). (Tr. 21-22). The ALJ continued the five step sequential analysis, but in doing so limited his analysis to the period after July 1, 2008. *Id.* At the second step, the ALJ found that Petrone "has a combination of impairments that is severe, including: residual neurologic deficits status post surgical intervention for acoustic neuroma, probable obstructive sleep apnea, possible myoclonic seizures, and degenerative joint disease of the right shoulder." *Id.* At the third step, the ALJ found that Petrone's impairment did not meet or equal the requirements of a listed impairment. *Id.*

Because Petrone did not establish disability at step three, the ALJ assessed Petrone's RFC based on all the relevant medical and other evidence in the record. *Id.* The ALJ found that, beginning on July 1, 2008, Petrone had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the additional postural limitation in his ability to use his right upper extremity overhead and pushing and pulling with his right arm. (Tr. 22-23).

At the fourth step, the ALJ found that Petrone was unable to perform past relevant work. (Tr. 23). At the fifth step, the ALJ found that considering Petrone's RFC, age, education and work experience, there were not a significant number of jobs in the national economy that Petrone could perform. (Tr. 23-24). Based on these findings, the ALJ determined that Petrone became disabled on July 1, 2008 and continued to be disabled through the date of the ALJ's decision. (Tr. 24).

**Standard**

The Court's review is limited to whether the Commissioner's decision was based on proper

legal standards under 42 U.S.C. § 405(g) and supported by substantial evidence on the record as a whole. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Sec'y of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorensen v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must consider both evidence that supports and evidence that detracts from the Commissioner's decision, but the decision shall not be overturned even if there is enough evidence in the record to support a contrary decision. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the ALJ's decision is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### Discussion

Petrone asserts that his work performed in the first quarter of 2008 was an unsuccessful work attempt and that the ALJ therefore erred in finding that Petrone engaged in SGA prior to July 1, 2008. (Pl. Opening Br. 3). In a motion for remand, the Commissioner concedes that the ALJ erred in finding that Petrone engaged in SGA between January 1, 2007 and July 1, 2008. (Def. Br. 6). I agree. Therefore, the sole issue is whether this case should be remanded for further proceedings or for the payment of benefits beginning January 1, 2007.

Page 5 - FINDINGS AND RECOMMENDATION

1.  **Unsuccessful Work Attempt and Sheltered Workshop**

To constitute SGA, the claimant's work must be both substantial and gainful. 20 C.F.R. § 404.1572. Substantial work activity is work that involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). Gainful work activity is work that is work done for pay or for profit, regardless of whether profit is realized. 20 C.F.R. § 404.1572(b). If the claimant is or has been engaged in SGA, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

Nonetheless, the Social Security Administration (SSA) generally presumes that a work effort lasting three months or less due to a claimant's impairments is an "unsuccessful work attempt" and is not considered evidence of an ability to engage in substantial gainful activity. *Gatliff v. Comm'n of Soc. Sec. Admin.*, 172 F3d 690, 692 (9th Cir. 1999); 20 C.F.R. § 404.1574(c). In order for a period of work to be considered an "unsuccessful work attempt," the SSA requires there to be a preceding event that constitutes a significant break in the continuity of the claimant's work. 20 C.F.R. § 404.1574(c)(2). A significant break occurs if the claimant's earnings were reduced below the SGA earnings level because of his impairment. *Id.* Following this significant break, if the claimant attempts to work again, but this work lasts for three months or less, then again falls below the SGA earnings level, the SSA will consider the short duration work an "unsuccessful work attempt." 20 C.F.R. § 404.1574(c)(3).

In this case, Petrone exceeded the SGA earnings level in 2006, earning an average of $2,122.25 per month, when the SGA earnings level at the time was $860 per month. (Tr. 70); 20 C.F.R. § 404.1574(b)(2)(ii)(B). In 2007, Petrone fell below the SGA earnings level, earning an average of $776.03 per month, when the SGA earnings level was $900 per month. (Tr. 70). This abrupt drop in Petrone's earning level constitutes a significant break. During the first quarter of

2008, Petrone's earnings rose above the SGA earnings level when he earned an average of $1,271.33 per month. (Tr. 76-77). However, Petrone's earning level again fell below the SGA earnings level during the second quarter of 2008 and remained below that level. (Tr. 75). Because Petrone's earnings at the beginning of 2008 followed a significant break in his work activity, and lasted 3 months or less, I find that the first quarter of 2008 in which his earnings exceeded SGA should therefore be considered an unsuccessful work attempt.

Furthermore, while neither party raises this issue in their briefs[1], the work that Petrone performed after January 1, 2007, including the period of time when his compensation exceeded the SGA earnings level, may also be classified as work performed in a sheltered workshop. The regulation governing sheltered workshops states that work done under special conditions accommodating a claimant's impairements may not in itself establish that a claimant has the ability to perform substantial gainful activity. 20 C.F.R. § 404.1573(c). Examples of special conditions include, but are not limited to, a claimant's ability to work "because of specially arranged circumstances" or a claimant being given the opportunity to work despite his impairment "because of...[a] past association with [an] employer, or [an] employer's concern for [claimant's] welfare." *Id.*

The record in this case contains a letter from Petrone's employer, Robert Westerman, which states: "Louis is paid two hours a week whether he is able to perform his duties or not. The Local Union continues his employment so that we can help offset his high medical costs. When I hired Louis, it was with the full understanding that he was not able to function well in any capacity." (Tr.

---

[1] However, the issue of whether Petrone was working in a sheltered workshop was raised by his attorney at the hearing. (Tr. 321).

Page 7 - FINDINGS AND RECOMMENDATION

102). The record also contains a letter from another previous employer, Gordon Bridgham, Senior Project Manager for Reese Electric, which discusses his longstanding working relationship with Petrone and his concern for Petrone's welfare. (Tr. 111). The record indicates that Petrone was employed by Reese Electric through the first quarter of 2008. (Tr. 75-82). These letters from previous employers indicate that Petrone was performing work in a sheltered workshop beginning January 1, 2007.

In sum, the ALJ erred in finding that Petrone was earning SGA from January 1, 2007 through July 1, 2008. Therefore, the ALJ's decision should not be affirmed in this regard.

2. **Remand**

A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed. *Holohan v. Massanari*, 246 F3d 1195, 1210 (9th Cir. 2001); *Brunnell v. Barnhart*, 336 F3d 1112, 1115-16 (9th Cir, 2003).

In this case, further proceedings are necessary. The ALJ must determine an RFC and complete the five step sequential analysis from January 1, 2007 through July 1, 2008. The ALJ should also consider supplemental vocational expert testimony if warranted to determine the impact of postural limitations and whether Petrone's skills during this time period were transferable.

### Recommendation

For the forgoing reasons, the Court should AFFIRM the Commissioner's final decision regarding disability after July 1, 2008. However, this case should be REMANDED for further proceedings so that the ALJ can assess whether Petrone was disabled between January 1, 2007 and July 7, 2008.

The above Findings and Recommendation will be referred to a United States District Judge

Page 8 - FINDINGS AND RECOMMENDATION

for review. Objections, if any, are due no later than fourteen days after the date this order is filed. The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 20 day of September, 2012.

MARK D. CLARKE
United States Magistrate Judge